## Location of State Liquor Store in Harrisburg

*Horace A. Segelbaum,* Special Deputy Attorney General, for Liquor Control Board.

*Metzger & Wickersham,* for protestants.

HARGEST, P. J., November 13, 1935.—The Pennsylvania Liquor Control Board, by section 301 of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, is given authority to "establish, operate, and maintain, at such places throughout the Commonwealth as it shall deem essential and advisable, stores to be known as 'Pennsylvania Liquor Stores'"; and pursuant to that authority it entered into negotiations to establish such a store at 2100 North Seventh Street, in the City of Harrisburg. Said section also provides:

"If . . . fifteen or more taxpayers, residing within a quarter of a mile of such location, shall file a protest with the court of quarter sessions of the county, averring that the location is objectionable because of its proximity to a church, a school, or to private residences, the court shall forthwith hold a hearing affording an opportunity to the protestants and to the board to present evidence. The court shall render its decision immediately upon the conclusion of the testimony, and from its decision there shall be no appeal."

Pursuant to this authority such a protest was pre-

sented and a hearing held November 13, 1935. The evidence shows that 2100 North Seventh Street is at the northwest corner of Seventh and Maclay Streets in the City of Harrisburg; that one short block west of Seventh Street is Jefferson Street, and that one block north of Maclay Street on Jefferson Street is the rear of the Camp Curtin Junior High School, a school which occupies an entire block and has approximately 1,700 students; that one block farther away is the Camp Curtin Methodist Episcopal Church. There are other churches in the neighborhood but somewhat farther away. The pastors of five churches in the neighborhood testified that they had a number of parishioners with families including children living in the vicinity of this proposed location, and that the children would ordinarily pass the property in question going to and from school and, in many instances, to and from Sunday school. The principal of the Camp Curtin Junior High School joined in the objection on the ground that a large number of the students of that school would pass this property in going to and from school, and that during a half hour recess period they would likely walk around the immediate vicinity of this property. The evidence on the part of all these pastors, as well as some property owners in the vicinity, was that the establishment of this liquor store would be a detriment to that community.

There was evidence by the owners of this property and several other persons that it would be a benefit to the community, or at least a convenience to people who desired to purchase liquor in the way which liquor stores are authorized to sell it.

While the sale of liquor through the medium of State liquor stores is a lawful business, yet the legislature has indicated, in the statute to which we have referred, that evils are likely to be attendant upon its sale, and to that end, in the very language of the statute quoted, the legislature has indicated that it may be objectionable to establish a liquor store in proximity to a church, school, or to private residences.

It is suggested that this location is not in "proximity" to the churches and the school indicated in this case. "Proximity" is a relative term and as defined in Webster's Dictionary means "nearness, neighborhood, vicinity."

In United States v. St. Anthony R. R. Co., 192 U. S. 524, 537, it is said:

"While 'proximity' or 'nearness' to an object is somewhat uncertain as a measure of distance, yet the use of such words as a definition, brings to the mind the idea that lands which are in fact far off, or distant, are not adjacent."

It might be that a school with 50 or 100 pupils who live in a different direction from the property in question would not, under all the circumstances, be considered to be in proximity if located where the Camp Curtin school is; but we think this school, which has approximately 1,700 students, many of whom pass the property in question going to and from school and during the recess period, is in proximity to the proposed liquor store, being one block and what amounts to half of an ordinary block away.

The legislature has recognized that liquor traffic should be regulated and controlled and that an evil may exist if a liquor store be located near a school. We must assume that a store managed by the Liquor Control Board would be properly operated. Therefore, the only evil conceivable which may come from proximity to a school would be the impressions that may be made upon the youthful minds of the children passing such a store where its merchandise is constantly displayed, because children would not be presumed to enter, and the only impressions made would be those which they would get from the outside. That having been the legislative determination, we think the courts should recognize it and so administer the statute. The school in question in this case is a junior high school where the students are of an impressionable age.

Moreover, in addition to the school there is the church

referred to which is only another block farther away, and also a number of residences.

Under all the evidence in this case we are of opinion that this is a locality in which the legislature contemplated a liquor store should not be established.

And now, November 13, 1935, the protest against the establishment of a Pennsylvania liquor store at 2100 North Seventh Street in the City of Harrisburg is sustained, and it is hereby determined that the proposed location is undesirable for the reasons set forth in the protest filed and in the foregoing opinion.